UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FRANCIS J. VON MALDER on behalf of Himself and Others Similarly Situated,<br><br>                             Plaintiff,<br><br>     v.<br><br>MORTON HOSPITAL, A STEWARD FAMILY HOSPITAL, INC., and MORTON HOSPITAL AND MEDICAL CENTER, INC.,<br><br>                             Defendants. | C.A. No. 1:22-cv-10201-ADB |

**DEFENDANT MORTON HOSPITAL, A STEWARD FAMILY HOSPITAL, INC.'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

This action arises out of Plaintiff Francis J. Von Malder's ("Plaintiff" or "Von Malder") employment at Defendant Morton Hospital, A Steward Family Hospital, Inc. ("Defendant" or "Morton"). While Mr. Von Malder avers that he was a member of 1199SEIU United Healthcare Workers East Union (the "Union") and the adjudication of his claims depends on the interpretation of the "Union Agreement," he fails to allege – because he cannot – that he exhausted (or even attempted to exhaust) the grievance procedure set forth in the operative collective bargaining agreement. As a result, Von Malder's state-law claims, which are preempted under Section 301 of the Labor Management Relations Act ("LMRA"), must be dismissed in their entirety.

**FACTUAL BACKGROUND**

For purposes of this motion to dismiss, Defendant assumes the facts asserted by Mr. Von Malder in his First Amended Complaint to be true. Furthermore, Defendant attaches the applicable "Union Agreement" referenced throughout Mr. Von Malder's complaint as **Exhibits A and B**.

1

Mr. Von Malder's First Amended Complaint (ECF No. 1-1) alleges, in pertinent part, the following:

### A. Mr. Von Malder's Employment with Morton

Mr. Von Malder states that he was employed by Morton[1] from approximately December 1, 2018 to December 2020 and that his primary job included environmental services.[2] ECF No. 1-1 at ¶¶ 7, 8. He has been a member of the Union since December of 2018. *Id.* at ¶ 10.

Until approximately July 2020, Mr. Von Malder was paid $15.30 an hour with the ability to receive different wage differentials depending upon his shift. *Id.* at ¶ 9. He alleges, without identifying the timeframe, that Defendant underpaid him and unspecified coworkers by $0.30 to $0.40 per week. *Id.* at ¶¶ 13, 14. Mr. Von Malder reported his claim of unpaid wages to his union representative. *Id.* at ¶ 15.

In July of 2020, Plaintiff went on leave pursuant to the Family Medical Leave Act, 29 U.S.C. § 2601. *Id.* at ¶ 16. He was ready to return to work on or about September 1, 2020, following his leave of absence. *Id.* at ¶ 17. Mr. Von Malder contacted Defendant's Human Resources Department regarding his return to work, but his call was not returned and he did not receive any correspondence. *Id.* at ¶ 18. In November of 2020, Mr. Von Malder attended and

---

[1] Mr. Von Malder incorrectly alleges he was employed by Defendant Morton Hospital and Medical Center, Inc. A review of the Massachusetts Secretary of State's website indicates that Morton Hospital and Medical Center, Inc. ceased operation more than a decade ago. *See* **Exhibit C** (Morton Hospital and Medical Center, Inc.'s last filed annual report -- in 2009). Of particular importance here, Morton Hospital and Medical Center, Inc. is not a party to the collective bargaining agreement Plaintiff contends was breached.

[2] "Environmental services" is a term used in the healthcare industry to describe janitorial and housekeeping services. *See generally* Deborah Chung, *Achieving Operational Excellence In Environmental Services*, Health Facilities Management, https://www.hfmmagazine.com/articles/3929-achieving-operational-excellence-in-environmental-services (last visited March 14, 2022).

completed a work training which he paid to attend but was never reimbursed for the training. *Id.* at ¶ 19.

In approximately January 2021, Mr. Von Malder learned that his health insurance had been terminated. *Id.* at ¶ 20. When he contacted Human Resources about his health insurance, he was informed that he had been terminated. *Id.* at ¶ 21. Mr. Von Malder had not been previously notified of his termination. *Id.* at ¶ 22.

Mr. Von Malder alleges that there is a "Union Agreement" which allows Defendant "to be able to discipline, suspend, or discharge an employee for Just Cause only unless the employee is on probation." *Id.* at ¶ 11. The "Union Agreement provides for an employee to be notified of a meeting being held prior to such discipline, suspension, or discharge." *Id.* at ¶ 12.

### B.     The "Union Agreement"

The First Amended Complaint alleges Mr. Von Malder was "protected" by a "Union Agreement" during his employment and that Steward Health Care System LLC ("Steward") breached the "Union Agreement" in a multitude of ways. *Id.* at ¶¶ 13-15, 35-40, 42-43, 46-49. Defendant entered into a Collective Bargaining Agreement ("CBA") with the Union covering the time period of October 1, 2013 – October 31, 2016. *See* Exhibit A.[3] On May 17, 2016, a Memorandum of Agreement was entered into between the Union and various hospitals, including Morton. *See* Exhibit A at 200-201. The May 2016 Memorandum of Agreement adopted and renewed the CBA and extended the CBA from November 1, 2016, through October 31, 2019. *Id.* The May 2016 Memorandum of Agreement was adopted as an appendix to the CBA. *Id.* On

---

[3] The CBA is a "multi-employer" labor contract between the Union and several hospitals, including Morton, affiliated with Steward. *See* Exhibit A, Article I ("Recognition").

November 14, 2019, a further Memorandum of Agreement was entered with the Union, which adopted, renewed, modified, and extended the CBA.  *See* <u>Exhibit B</u>.

Article XXIV of the CBA, as amended, sets forth the Grievance and Arbitration process. The process is as follows:

> **In the event of a controversy concerning the meaning or application of any provision of this Agreement, such controversy shall be treated by the Union and the Employer as a grievance** and shall be settled, if possible, by the Union, the worker and the Employer as set forth hereafter.  At all Steps of the Grievance Procedure, the worker or delegate will submit the grievance, in writing, explaining as specifically as possible, the nature of the complaint and identify the contract provision(s) affected.  Group grievances may be submitted at Step 2.
>
> <u>Step 1 – Department Head/Manager</u>
> **The worker or Delegate will present a grievance in writing to the Manager or Department Head within twenty (20) working days from the date of the alleged violation of the contract.  The grievance must include the facts, dates, applicable provision(s) of the contract and the remedy requested.**  Within [fourteen (14)] working days of receipt of the grievance, the Manager or Department Head will… meet with the Delegate and the worker and hear the grievance/ discuss the issues.  If the grievance is not settled at the grievance hearing the Manager or Department Head will respond to the grievance in writing within ten (10) working days from the date of the grievance meeting.
>
> <u>Step 2 – Senior Management and Human Resources</u>
> If the matter is not resolved through the process for the Step 1 grievance, **the Delegate will present a Step 2 grievance in writing to the Human Resources Department within ten (10) working days of receipt of the Step 1 response.**  The Director of Human Resources and the appropriate Vice President (CNO or other member of SLT) will set up a meeting with the Delegate and the grievant to hear the grievance, within ten (10) days of receipt of the Step 2 grievance. If the grievance is not resolved at this meeting, the Director of Human Resources will have ten (10) working days to respond to the grievance in writing.
>
> <u>Step 3 – Vice President of Human Resources</u>
> If the matter is not resolved through the Step 2 grievance process, the Union Representative will file a Step 3 Grievance with the appropriate Vice President of Human Resources or his or her designee.  Upon receipt of the Step 3 Grievance, the Vice President of Human Resources or his or her designee will contact the Union Representative to discuss the matter and gain an understanding of the outstanding concerns.  If upon discussion with the Union and investigation of the matter, the Vice President of Human Resources or his or her designee and the Union Representative are unable to structure a satisfactory resolution, the parties will meet

to hear the Step 3 grievance within twenty (20) days of receipt of the Step 3 grievance.  If the matter is not resolved at the Step 3 grievance hearing, the Vice President of Human Resources or his or her designee will respond to the grievance in writing within twenty (20) days of the date of the Step 3 hearing.

<u>Optional Step 4</u>
By mutual agreement the parties may apply to the Federal Mediation & Conciliation Service to mediate the grievance and, at any time during the process or within five (5) days of terminating the process, the grievance may be moved to arbitration.

***

<u>Arbitration</u>
In the event that the parties are unable to settle a grievance after the Step 3 or Step 4 process is complete, then either party may request arbitration of said grievance by serving written request for arbitration upon the other party, no later than thirty (30) days following the date of the written answer under Step 3 or within 5 days of terminating the optional Step 4 mediation process.  If either party fails to make a written request for arbitration in this manner within this thirty (30) day period the grievance shall be deemed to have been settled in accordance with the most recent written answer which shall be final and binding on the parties.

*See* <u>Exhibit A</u> at 34, 35 and <u>Exhibit B</u> at 10, emphasis added.  Additionally:

The Step 3 Grievance must be filed within 1 year from the date of the alleged violation, and the grievant must have met the applicable deadlines for the Step 1 and 2 Grievances.

*See* <u>Exhibit B</u> at 10.

In addition, the May 2016 Memorandum of Agreement and November 2019 Memorandum of Agreement set forth pay scales applicable to employees of Morton.  *See* <u>Exhibit A</u> at 200 and <u>Exhibit B</u> at 1, 2, 13-24.

## **OVERVIEW OF PLAINTIFF'S CLAIMS AND PROCEDURAL HISTORY**

Mr. Von Malder initiated this lawsuit in Plymouth County Superior Court and then filed an amended complaint as a matter of right.  *See* ECF No. 1-1.  The operative complaint asserts three claims against Defendant: (Count I) nonpayment of earned wages (M.G.L. c. 149); (Count II) breach of the "Union Agreement"; and (Count III) wrongful termination.  Specifically, Plaintiff

contends Morton "breached the Union Agreement" and violated the Massachusetts Wage Act (M.G.L. c. 149) by failing to pay him and "similarly situated" employees all wages to which they were entitled. *Id*. at ¶¶ 35-40. He also alleges that Morton breached the "Union Agreement" by terminating his employment without providing the requisite notice, resulting in his unlawful termination. *Id.* at ¶¶ 42-43, 46-49.

On February 7, 2022, Defendant removed the case to federal district court on the grounds that Mr. Von Malder's claims, although framed as state-law claims, trigger federal question jurisdiction by virtue of complete preemption under Section 301 of the LMRA. *Id.*

## ARGUMENT

### I. Standard of Review

The Court is well-versed on the standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6). Still, as pertinent here, while the Court does not ordinarily consider documents outside of the complaint when considering a Rule 12(b)(6) motion, it may consider "documents incorporated by reference into the complaint . . .." *See Lister v. Bank of America,* 790 F.3d 20, 23 (1st Cir. 2015); *see also Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001). In particular, the "interrelationship of the state claims and a [collective bargaining agreement] cannot be avoided merely by refusing to identify a [collective bargaining agreement]." *See Cavallaro v. UMass Memorial Healthcare, Inc.*, 678 F.3d 1, 5 (1st Cir. 2012); *see also White v. C. Carney Recycling Solutions, LLC*, 548 F. Supp. 3d 272, 274 (D. Mass. 2021) (Zobel, J.) (considering collective bargaining agreement not attached to complaint for purposes of a motion to dismiss); *Rose v. RTN Federal Credit Union*, 19-11854-WGY, 2019 WL 1237555, *1, *1 (D. Mass. Dec. 9, 2019) (Young, J.) (same).

**II.     Plaintiff's Claims are Preempted by Section 301 of the LMRA**

Based on Plaintiff's allegations, the adjudication of each of his state-law claims is "inextricably intertwined with consideration of the terms" of the CBA and, thus, completely preempted by the LMRA. *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985). Section 301 of the LMRA gives jurisdiction to a federal court when state-law claims require the analysis and interpretation of provisions in a collective bargaining agreement. *See Lawless v. Steward Health Care Sys., LLC,* 894 F.3d 9, 17 (1st Cir. 2018); *see also Cavallaro* 678 F.3d at 5 (complete preemption applies to state law claims "founded directly on rights created by collective-bargaining agreements or substantially dependent on analysis of a collective-bargaining agreement.") (internal quotations omitted). Massachusetts Wage Act claims fall "within the LMRA's preemptive sweep." *See Rose v. RTN Fed. Credit Union,* 1 F.4th 56, 61 (1st Cir. 2021); *see also Cavallaro*, 678 F.3d at 7-8 (finding Wage Act claim preempted when "determining what (if anything) is owed" was an "inevitable issue" and would "depend[] at least arguably on interpretations and applications of the CBA").

Here, Plaintiff's claims are clearly preempted by Section 301 of the LMRA. Each claim requires for its resolution analysis and interpretation of the CBA. For instance, as to Count I, the wage schedules in the CBA will determine whether Plaintiff was paid for all hours worked. *See* ECF No. 1-1 at ¶¶ 9-10, 13-15. Indeed, Plaintiff states that he reported the claim to the Union (*Id.* at ¶ 15); thus, Plaintiff was contemporaneously aware that the CBA governed the issue of nonpayment of wages. Further, by virtue of his claim that Defendant breached the CBA, Plaintiff concedes the CBA is enforceable.

Likewise, Counts II and III arise out of Defendant's alleged violation of the notice provision of the CBA. *Id.* at ¶¶ 42-44, 46-48.

Accordingly, Plaintiff's claims are preempted by Section 301 of the LMRA.

### III. As Plaintiff Fails to Allege He Exhausted the Grievance Procedure Required by the CBA, Dismissal of his Claims is Warranted

It is well established that "individual employees wishing to assert contract grievances must [at least] attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress." *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). Thus, for claims preempted by Section 301 of the LMRA, including Massachusetts common law and statutory claims, plaintiffs must adhere to the grievance process outlined in a collective bargaining agreement or face dismissal. *See, e.g., Rose,* 1 F.4th at 64 (affirming district court's dismissal of plaintiff's claims for failure to follow grievance procedure); *White,* 548 F. Supp. 3d at 274 (dismissing Wage Act, breach of contract, breach of the covenant of good faith and fair dealing, and quantum meruit claims due to plaintiffs' failure to allege they followed grievance procedure); *Hamilton v. Partners Healthcare System, Inc.*, 209 F. Supp. 3d 397, 410-412 (D. Mass. 2016) (Woodlock, J.) (dismissing Massachusetts Wage Act, breach of contract claims, and other common law claims where plaintiffs did not follow grievance procedure); *Reyes v. SJ Services Inc.*, 12-11715-DPW, 2014 WL 5485943 at *1, *12 (D. Mass. 2014) (Woodlock, J.) (dismissing union employees' Wage Act claims because they failed to follow grievance procedure detailed in CBA); *DiGiantommaso v. Globe Newspaper Co. Inc.,* 632 F. Supp. 2d 85, 90 (D. Mass. 2009) (Gorton, J.) (holding "failure to exhaust available grievance procedures under the CBA precludes [a court] from treating those claims as having been brought under § 301, and dismissal is thus required"); *Tortolano v. Lemuel Shattuck Hospital*, 93 Mass. App. Ct. 773, 777 (Mass. App. Ct. 2018) (affirming dismissal of plaintiff's breach of contract claim for failing to exhaust grievance procedure).

Here, the CBA sets forth a detailed grievance process that encompasses any "controversy concerning the meaning or application of any provision of this Agreement." *See* Exhibit A at 34. Indeed, there is a three-step process for bringing grievances and an arbitration provision. However, Plaintiff does not allege that he attempted to follow or exhaust those steps, much less in the time prescribed under the CBA. At most, Plaintiff alleges that he "reported his claim of unpaid wages to his union representative," which plainly demonstrates he understood the need to follow the CBA grievance procedure. ECF No. 1-1 at ¶ 15.

As Plaintiff does not allege that he followed the grievance procedure required under the CBA, and he is incapable of demonstrating he did so, his claims should be dismissed with prejudice.

## CONCLUSION

Accordingly, Defendant Morton Hospital, a Steward Family Hospital, Inc., respectfully requests that the Court allow the motion and enter a judgment dismissing each of Plaintiff's claims with prejudice.

Respectfully submitted,

MORTON HOSPITAL, A STEWARD FAMILY HOSPITAL, INC.

By its Attorneys,

*/s/ Seth J. Robbins*
Howard M. Cooper (BBO #543842)
hcooper@toddweld.com
Seth J. Robbins (BBO #655146)
srobbins@toddweld.com
Lucia A. Passanisi (BBO #691189)
lpassanisi@toddweld.com
Todd & Weld LLP
One Federal Street, 27th Floor
Boston, MA 02110
617-720-2626

Dated:  March 15, 2022

**CERTIFICATE OF SERVICE**

    I, Lucia A. Passanisi, hereby certify that this document has been filed through Pacer and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 15, 2022.

    */s/ Lucia A. Passanisi*