UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRANCIS J. VON MALDER, | * * * * | |
| Plaintiff, | * * | |
| v. | * * | Civil Action No. 22-cv-10201-ADB |
| MORTON HOSPITAL, A STEWARD FAMILY HOSPITAL, INC., and MORTON HOSPITAL AND MEDICAL CENTER, INC., | * * * * | |
| Defendants. | * * * | |

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

BURROUGHS, D.J.

On January 13, 2022, Francis J. Von Malder ("Plaintiff") brought this action on behalf of himself and all similarly situated employees against Morton Hospital, a Steward Family Hospital, Inc., and Morton Hospital and Medical Center, Inc. (collectively "Defendants") alleging violations of the Massachusetts Wage Act, breach of contract, and wrongful termination. [ECF No. 1-1 ¶¶ 34–49]. Pending before the Court is Defendants' motion to dismiss the complaint, which argues that Plaintiff's claims are properly treated as arising under Section 301 of the Labor Management Relations Act ("LMRA") and, further, should be dismissed because Plaintiff did not fully exhaust the grievance procedure set forth in the governing collective bargaining agreement ("CBA"). [ECF No. 9 at 1–2].

For the reasons set forth below, Defendants' motion to dismiss, [ECF No. 9], is GRANTED.

I.  **BACKGROUND**

The following relevant facts are taken primarily from the complaint, [ECF No. 1-1 ("Compl.")], which the Court assumes to be true when considering a motion to dismiss. Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  The Court also considers the governing CBA "because the document's authenticity is not disputed" and it is central to resolving Plaintiff's claims.  Barry v. UMass Memorial Med. Ctr., Inc., 245 F. Supp. 3d 323, 324 (D. Mass. 2017) (citing Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007)); see also Clorox Co. P. R. v. Proctor & Gamble Com. Co., 228 F.3d 24, 32 (1st Cir. 2000) ("[I]t is well-established that in reviewing the complaint, we may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment.") (internal citations and quotation marks omitted).

   A.  **Plaintiff's Employment and Termination**

Plaintiff was employed by Defendants from approximately December 1, 2018 to December 2020.  [Compl. ¶ 7].  Throughout his employment, Plaintiff was a member of the 1199 SEIU United Healthcare Workers East Union, which, at the time, had a CBA with Defendants. [Id. ¶ 10; ECF No. 13 at 2; ECF 10-1 ("CBA")].  During an unspecified period of time, Defendants failed to pay Plaintiff and similarly situated co-workers all wages owed.  [Compl. ¶ 13].  Specifically, he and his co-workers were underpaid in the amount of $0.30–$0.40 per week.  [Id. ¶ 14].  Plaintiff reported these unpaid wages to his union representative.  [Id. ¶ 15].

In July 2020, Plaintiff went on medical leave pursuant to the Family and Medical Leave Act, 29 U.S.C. § 2601.  [Compl. ¶ 16].  On or around September 1, 2020, when Plaintiff was ready to return to work, he contacted Defendants' Human Resources ("HR") Department but

2

received no response.  [Id. ¶¶ 17–18].  Despite not hearing from Defendants' HR Department, Plaintiff paid to attend a work training in November 2020, for which he was not reimbursed.  [Id. ¶ 19].  Plaintiff does not state or otherwise indicate that Defendants ever agreed to reimburse him for the training.  In January 2021, Plaintiff, still having heard nothing from Defendants' HR department, discovered that his health insurance had been terminated.  [Id. ¶ 20].  Plaintiff contacted Defendants' HR Department about his health insurance, at which time he was informed, for the first time, that his employment had been terminated.  [Id. ¶¶ 21–22].

> **B.    The CBA's Grievance and Arbitration Procedures**

Article XXIV of the CBA sets forth the grievance and arbitration procedures, both informal and formal, for resolving employees' concerns.  [CBA at 24–25].  The informal process section "encourage[s] [employees] to bring concerns/issues to their immediate supervisor to see if the matter can be resolved informally[,]" and, if it cannot, requires that the formal procedure be followed.  [Id. at 24].  The formal procedure requires that the controversy "be treated . . . as a grievance" and "be settled, if possible, by the Union, the [employee] and the Employer" through a three-step process, with an optional fourth step.  [Id.].  In Step One, the employee "present[s] a grievance in writing[,]" which includes "the facts, dates, applicable provision(s) of the contract and the remedy requested[,]" to "the Manager or Department Head within twenty (20) working days from the date of the alleged violation of the contract."  [Id.].  Upon receiving the written grievance, the Manager or Department Head must arrange to meet with the Union Delegate and employee within twenty working days.  [Id.].  If not resolved there, the Manager or Department Head must respond to the grievance in writing within 10 working days of the meeting.  [Id.].

If the matter is not resolved in the first step, the Union Delegate "will present a Step 2 grievance in writing to the [HR] Department within ten (10) working days of receipt of the Step

3

1 response." [CBA at 24]. Upon receipt of a Step 2 grievance, the Director of HR and the appropriate Vice President must, within ten days, arrange a meeting with the Union Delegate and the employee to hear the grievance, and if the matter is not resolved at that meeting, the Director of HR must respond in writing within the following ten days. [Id.].

If the second step also fails to resolve the matter, "the Union Representative will file a Step 3 Grievance with the appropriate Vice President of [HR][,]" who must "contact the Union Representative to discuss the matter." [CBA at 24]. If the Vice President of HR is nonetheless "unable to structure a satisfactory resolution, [the Vice President of HR and the Union Representative] will meet to hear the Step 3 grievance within twenty (20) days[.]" [Id.]. If after that meeting, the matter remains unresolved, the Vice President of HR is required to respond to the grievance in writing within 20 days. Then, if a solution still cannot be reached, the parties may mutually agree to "apply to the Federal Mediation & Conciliation Service to mediate the grievance and, at any time during the process or within five (5) days of terminating the process, the grievance may be moved to arbitration." [Id.].

### C. Procedural History

Plaintiff filed this complaint in Plymouth County Superior Court on January 13, 2022 and filed an amended complaint with that court on January 25, 2022. [ECF No. 1 ¶ 1]. On February 7, 2022, Defendants removed the matter to this Court, [id. ¶ 5], and on March 15, 2022 moved to dismiss the complaint, [ECF No. 9]. Plaintiff opposed the motion on April 21, 2022, [ECF No. 13], and Defendants replied on May 4, 2022, [ECF No. 16].

## II. JURISDICTION

Although the Court's jurisdiction is not challenged, the Court notes that Section 301 of the LMRA grants federal courts jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce

. . . ." 29 U.S.C. § 185(a). "Case law interpreting that statute has evolved to provide that any claims 'substantially dependent on analysis of a collective-bargaining agreement' are subject to complete preemption."[1] DiGiantommaso, 632 F. Supp. 2d at 88 (quoting Caterpillar, Inc. v. Williams, 482 U.S. 386, 394 (1987)). In other words, "where a plaintiff alleges conduct that arguably constitutes a breach of a duty that arises pursuant to a collective bargaining agreement, or if the plaintiff's claims 'arguably hinge[ ] upon the interpretation' of such an agreement, § 301 preempts" and there is federal jurisdiction. Id. (quoting Flibotte v. Pa. Truck Lines, Inc., 131 F.3d 21, 26 (1st Cir. 1997) (alteration in original); see also Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220 (1985) ("[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, the claim must either be treated as a § 301 claim . . . or dismissed as pre-empted by federal labor-contract law.") (internal citation omitted).

Here, Plaintiff has brought claims for violation of the Massachusetts Wage Act (Count I), breach of contract (Count II), and wrongful termination (Count III). In the Court's view, each of these claims, including the count brought pursuant to the Wage Act,[2] "depends upon the existence of an implied obligation or duty" requiring "a careful review of the totality of the

---

[1] "The doctrine of complete preemption operates as a corollary to the well-pleaded complaint rule. Where it applies, complete preemption converts an ordinary state law claim into a federal claim for purposes of the well-pleaded complaint rule." DiGiantommaso v. Globe Newspaper Co., 632 F. Supp. 2d 85, 88 (D. Mass. 2009) (internal citation omitted).

[2] With respect to the Wage Act claim, Plaintiff does not specify what accounts for the underpayment or pay discrepancy, but also does not assert any facts that would suggest the claim does not require interpretation of the CBA. Further, courts have held that Wage Act claims do require interpretation of the CBA and are therefore subject to complete preemption. See, e.g., Cavallaro v. UMass Mem. Healthcare, Inc., 678 F.3d 1, 8 (1st Cir. 2012) (Wage Act claim "preempted by entanglement with CBA interpretation"); Clee v. MVM, Inc., 91 F. Supp. 3d 54, (D. Mass. 2015) (Massachusetts Wage Act claims are intertwined with the applicable CBA and therefore preempted).

parties' relationship" including "interpretation of the CBA" and are therefore properly treated as arising under Section 301.  DiGiantommaso, 632 F. Supp. 2d at 88 (citation omitted).  The Court therefore proceeds to Defendants' motion to dismiss for failure to exhaust.

### III.    LEGAL STANDARD

On a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable inferences from those facts in favor of the plaintiff.  United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 383 (1st Cir. 2011).  Additionally, "a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice."  MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

A complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief[,]'" Cardigan Mountain Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)), and must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory[,]" Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  Although detailed factual allegations are not required, a complaint must set forth "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).

IV.     DISCUSSION

Defendants argue that Plaintiff's claims are preempted by Section 301 of the LMRA because Plaintiff failed to exhaust the remedies available to him through the CBA. [ECF No. 10 at 7–8]. In labor disputes governed by federal law, "federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union[.]" Republic Steel Corp. v. Maddox, 379 U.S. 650, 652 (1965). In other words, prior to bringing suit Plaintiff was required to exhaust the grievance procedures set forth in the CBA. [CBA at 24–25]. The First Circuit has recognized "three occasions when a court may exercise jurisdiction over an employee's Section 301 suit against an employer absent complete exhaustion of contractual remedies because circumstances have impugned the integrity of the arbitration process[,]" which are: (1) when only the union has the "power to invoke the grievance procedures" and wrongfully refuses to do so; (2) when "the employer repudiates the grievances procedures"; or (3) when "the grievances procedures would be futile." Ramirez-Lebron v. Int'l Shipping Agency, Inc., 593 F.3d 124, 132 (1st Cir. 2010) (emphasis omitted) (citation omitted); see also Vaca v. Sipes, 386 U.S. 171, 185 (1967). Plaintiff does not allege that any of these circumstances apply here.

Despite this requirement to exhaust the grievance procedures available to him in the CBA before initiating litigation, Plaintiff makes, at most, an oblique reference to pursuing the requisite grievance procedures by asserting that he talked to a union representative about his alleged unpaid wages. [Compl. ¶ 15]. This alone does not suffice to exhaust the available grievance procedures. Cf. Tortolano v. Lemuel Shattuck Hospital, 109 N.E.3d 516, 519–21 (Mass. App. Ct. 2018) (finding that a plaintiff had not sufficiently exhausted CBA grievance procedures even where a union representative had actually filed multiple claims on the plaintiff's behalf but

7

plaintiff then failed to follow up on the unanswered claims). Plaintiff belatedly attempts to remedy this pleading deficiency by stating in his opposition that he "attempted to follow the steps outlined" in the CBA's grievance process but did not receive a response from the Defendants or the Union. [ECF No. 13 at 3.]. Courts, however, are limited to factual allegations raised in the complaint, and Plaintiff cannot remedy his pleading deficiencies by raising new allegations in his opposition. See Murphy v. Yard, No. 20-cv-40043, 2021 WL 4295842, *3 (D. Mass. 2021) ("[Plaintiff] cannot avoid dismissal of his complaint by asserting new facts and legal claims in his opposition that cure the deficiencies in his original pleading."). Moreover, even in his opposition, Plaintiff does not set forth what affirmative steps he took to pursue the formal grievance procedure—such as presenting a grievance in writing to his manager or department head—or declare that he exhausted it.

Because Plaintiff's operative pleading has not alleged that he followed any of the CBA's grievance process, the Court cannot find that Plaintiff exhausted the remedies available to him. See White v. Carney Recycling Sols., LLC, 548 F. Supp. 3d 272, 274 (D. Mass 2021). In turn, Plaintiff's "failure to exhaust available grievance procedures under the CBA precludes this Court from treating those claims as having been brought under § 301, and dismissal is thus required." Id. (quoting DiGiantommaso, 632 F. Supp. 2d at 90) (internal quotation marks omitted).

V.     CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss, [ECF No. 9], is GRANTED. Plaintiff may file a motion for leave to amend his complaint, supported by a proposed second amended complaint, within 21 days.

**SO ORDERED.**

February 8, 2023                                        /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS

U.S. DISTRICT JUDGE